**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CENTER FOR AUTO SAFETY,

        Plaintiff,

        v.

U.S. DEPARTMENT OF TREASURY, *et al.*,

        Defendants.

Civil Action No. 11-1048 (BAH)

Judge Beryl A. Howell

**MEMORANDUM OPINION**

The plaintiff, Center for Auto Safety ("CAS"), requested, under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, documents related to the 2009 Chrysler and General Motors bankruptcies. The defendant, the United States Department of the Treasury ("Treasury") has released to the plaintiff over 65,000 pages of records but continues to withhold approximately 452 documents in whole and 90 documents in part at the request of the defendant-intervenor General Motors LLC ("GM") and 284 documents in whole or in part at the request of Chrysler Group LLC ("Chrysler"). Treasury contends that the withheld documents are exempt from release pursuant to Exemption 4 of the FOIA, 5 U.S.C. § 552(b)(4), because they contain confidential commercial or financial information likely to impair the government's ability to obtain necessary information in the future and likely to cause substantial competitive harm to GM and Chrysler. The plaintiff challenges the majority of the withholdings, arguing that the defendants' *Vaughn* indices are insufficiently descriptive and the defendants have not sufficiently shown that the information withheld is confidential.

Pending before the Court are cross-motions for summary judgment: (1) a joint motion for summary judgment brought by Treasury and GM ("Jt. Mot."), ECF No. 36, and (2) a cross-

motion for summary judgment brought by CAS ("Pl.'s Mot."), ECF No. 40. For the reasons

discussed below, the defendants' motion is granted in part and denied in part, and the plaintiff's

cross-motion is denied without prejudice.

## I.   BACKGROUND

In the fall of 2008, in response to economic instability, Congress enacted the Emergency

Economic Stabilization Act ("EESA"). Defs.' Mot., Ex. 1, Decl. of Kathleen Cochrane

("Cochrane Decl.") ¶ 26, ECF No. 36-1. The EESA established the Office of Financial Stability

("OFS"), which implemented the Troubled Asset Relief Program ("TARP"). *Id.* Pursuant to the

TARP, Treasury established the Automotive Industry Financing Program ("AIFP") and, through

2009, provided billions of dollars of loans to entities associated with GM and Chrysler.[1] *Id.* ¶¶

26–28; Pl.'s Statement of Material Facts as to Which There is No Genuine Issue & Pl.'s Resp. to

Defs.' Statement of Material Facts ("Pl.'s SMF") ¶¶ 18–19, ECF No. 40; Defs.' Resp. to Pl.'s

Statement of Material Facts as to Which There is No Genuine Issue ("Defs.' Resp. SMF") ¶¶ 18–

19, ECF No. 48-1. In connection with the loans, GM and Chrysler entities were required to

implement restructuring plans, *see* Cochrane Decl. ¶¶ 27–28; Pl.'s SMF ¶¶ 29–30; Defs.' Resp.

SMF ¶¶ 29–30, and in February 2009, President Obama established the Auto Task Force ("Task

Force") to review the viability of the restructuring plans, Cochrane Decl. ¶ 30.

The government provided an initial loan to General Motors Corporation ("Old GM," now

known as "Motors Liquidation Company"), which filed for bankruptcy, on June 1, 2009, as part

of its restructuring. *Id.* ¶ 27. Pursuant to Section 363 of the Bankruptcy Code, 11 U.S.C. § 363,

a newly formed entity, General Motors LLC ("GM"), the defendant-intervenor in this lawsuit,

---

[1]      The government's provision of loans to auto companies during this time period is commonly referred to as
the auto industry "bailout." *See, e.g.*, Pl.'s Mem. Supp. Mot. Summ. J. & Opp'n Defs.' Mot. Summ. J. ("Pl.'s
Mem.") at 1, ECF No. 40.

purchased most of the assets and some of the liabilities of Old GM ("GM Section 363 Sale"). *Id.*; Pl.'s SMF ¶¶ 3, 11; Defs.' Resp. SMF ¶¶ 3, 11.  Similarly, Chrysler LLC ("Old Chrysler," now known as "Old Carco") filed for bankruptcy in April 2009, and in June 2009, the newly formed entity, Chrysler Group LLC ("Chrysler") purchased most of the assets and some of the liabilities of Old Chrysler ("Chrysler Section 363 Sale").  Cochrane Decl. ¶ 28; Pl.'s SMF ¶¶ 4, 12; Defs.' Resp. SMF ¶ 4, 4 n.1, 12.  As part of the Section 363 Sales, GM and Chrysler were not required to assume certain liabilities that were left with Old GM and Old Chrysler.  Pl.'s SMF ¶¶ 11–12; Defs.' Resp. SMF ¶¶ 11–12.  This aspect of the auto industry bailout is the principal focus of the FOIA request at issue.

The plaintiff, CAS, is "a nationwide nonprofit consumer advocacy organization . . . . work[ing] toward improved safety, environmental responsibility, and fair dealing in the automotive industry and marketplace."  Compl. ¶ 4, ECF No. 1; Pl.'s Mot., Ex. R ("FOIA Req.") at 1, ECF No. 42-10.  On June 8, 2009, CAS requested under the FOIA:  "All e-mail correspondence since January 1, 2009, in any way related to the Chrysler and General Motors bankruptcies, the events preceding those bankruptcies, and the federal government's roles in and deliberations concerning those matters."  FOIA Req. at 1; *see also* Compl. ¶ 18; Defs.' Statement of Material Facts as to Which There is No Genuine Issue ("Defs.' SMF") ¶ 1, ECF No. 36; Pl.'s SMF ¶¶ A.1, B.1; Defs.' Resp. SMF ¶ 1.  The request included "all . . . e-mails generated and/or received by the Department of the Treasury and . . . Brian Deese[,] Ed Montgomery[,] Ron Bloom[,] Steven Rattner[,] Matthew Feldman[,] [and] Timothy Geithner[.]"  FOIA Req. at 1; *see also* Compl. ¶ 19; Defs.' SMF ¶ 1.  CAS also requested a waiver of the fees and costs associated with processing its request.  Compl. ¶ 20.

The plaintiff's FOIA request was prompted by concern about the liabilities left with the old, bankrupt companies, which allegedly have left consumers injured by defectively manufactured cars without recourse.  *See* Pl.'s Mem. Supp. Mot. Summ. J. & Opp'n Defs.' Mot. Summ. J. ("Pl.'s Mem.") at 1, 16, 19, ECF No. 40.  According to the plaintiff, "in exchange for the bailout funds[,]" GM and Chrysler were allowed to leave liabilities, "including the need to compensate consumers injured by defective cars manufactured by General Motors and Chrysler[,]" with the old, bankrupt companies which do not have "the necessary funds to compensate victims of such accidents and incidents and their families."  *Id.* at 1 (emphasis omitted).  The plaintiff is concerned about the government's role in allegedly "requiring the 'new' Chrysler and GM to leave behind potential liabilities vis-à-vis consumers who have been both physically and economically injured by defective products manufactured by the 'old' GM and Chrysler."  *Id.* at 16.

Almost two years after the plaintiff made its FOIA request, around March 2011, Treasury had identified 170,000 pages of documents responsive to the plaintiff's request but denied the plaintiff's fee waiver request, which denial was appealed by CAS.  Compl. ¶¶ 23–25.  Then, on June 7, 2011, having received no response to its appeal, *see id.* ¶¶ 28–29, CAS filed the Complaint in this action requesting declaratory and injunctive relief, *see id.* at 10–11.

On December 16, 2011, the parties filed a Voluntary Stipulation of Partial Settlement and Proposed Order for Further Proceedings ("Stipulation"), ECF No. 12, which the Court granted, *see* Minute Order, Dec. 19, 2011.  Per the Stipulation, Treasury agreed to waive the fees associated with the plaintiff's FOIA request and to produce, on a rolling basis for twelve months, certain records retrieved from its files that were dated between January 1, 2009 and August 27,

2009.  Stipulation ¶¶ 1, 3–6; Defs.' SMF ¶ 2; Pl.'s SMF ¶ B.2.  Thus, by agreement, the

plaintiff's FOIA request came to include documents dated through August 27, 2009.

Pursuant to 31 C.F.R. § 1.6,[2] Treasury provided GM and Chrysler with opportunities to

review and object to the disclosure of documents Treasury identified as responsive to the

plaintiff's FOIA request. Cochrane Decl. ¶ 34.  According to the parties' opening briefs,

although negotiations narrowed the scope of the parties' dispute, GM continues to object to

Treasury's release of a total of 452 whole documents and 90 partially redacted documents—a

total of 542 documents, Cochrane Decl. ¶ 24; Pl.'s SMF ¶ A.2; Defs.' Resp. SMF ¶ 2, and

Chrysler continues to object to Treasury's release of 284 documents in whole or in part, Pl.'s

SMF ¶ A.2; Defs.' Resp. SMF ¶ 2.  Consequently, a total of 542 GM documents and 284

Chrysler documents may remain in dispute, *see* Cochrane Decl. ¶ 24, although the parties

suggest slightly different numbers in the course of their briefing.[3]

The records withheld that remain at issue consist of email communications between

Treasury and either GM or Chrysler, or between business advisors and legal representatives of

Treasury, GM and Chrysler and related attachments to those emails.  Defs.' SMF ¶ 6; Pl.'s SMF

¶ B.6.  Some of the information pertains to Old GM and Old Chrysler and liabilities that were

left with these entities as a result of the Section 363 Sales.  Pl.'s SMF ¶¶ 10, 13; Defs.' Resp.

SMF ¶¶ 10, 13.  All of the information was generated by or provided to Treasury between

---

[2]        This regulation generally bars from FOIA disclosure "information provided to the Department of the
Treasury by a business submitter" until notice and an opportunity to object has been given to the business submitter.
31 C.F.R. § 1.6(a)–(c).  Business submitters must object to disclosure of information by "specify[ing] all grounds for
withholding any of the information under any exemption of the [FOIA] and, in the case of Exemption 4, shall
demonstrate why the information is considered to be a trade secret or commercial or financial information that is
privileged or confidential."  *Id.* § 1.6(d)(1).
[3]        Contrary to the numbers in the parties' initial briefings and affidavits, later briefing refers to disputes over
452 whole GM and 89 partially redacted GM documents—a total of 451 GM documents, *see* Defs.'
Combined Opp'n to Pl.'s Mot. Summ. J. & Reply to Pl.'s Opp'n to Defs.' Jt. Mot. Summ. J. ("Jt. Opp'n & Reply")
at 15 n.10, ECF No. 49, and 283 Chrysler documents, *see id.* at 17.

January and August 2009 and most was required by Treasury when deciding whether to provide federal funding to GM and Chrysler under the TARP.  Pl.'s SMF ¶¶ 16, 28; Defs.' Resp. SMF ¶¶ 16, 28.  Treasury has submitted two separate *Vaughn* indices for the documents at issue, one for the disputed GM documents, *see* Jt. Mot., Ex. 2, Decl. of Laura L. Fitzpatrick ("GM Decl."), Ex. D ("GM *Vaughn* Index"), ECF No. 36-2, and one for the disputed Chrysler documents, *see id.*, Ex. 3, Decl. of Chrysler Group LLC ("Chrysler Decl."), Ex. A ("Chrysler *Vaughn* Index"), ECF No. 36-3, each of which was initially created by GM and Chrysler, respectively, at Treasury's request, *see* Cochrane Decl. ¶¶ 17–24.

## II.     LEGAL STANDARD

Congress enacted the FOIA as a means "to open agency action to the light of public scrutiny," *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 750 F.3d 927, 929 (D.C. Cir. 2014) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)), and "to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to the public on request," *DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir. 2015) (citing *Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988)).  As the Supreme Court has "consistently recognized[,] [] the basic objective of the Act is disclosure."  *Chrysler Corp. v. Brown*, 441 U.S. 281, 290 (1979).  At the same time, the statute represents a "balance [of] the public's interest in governmental transparency against legitimate governmental and private interests that could be harmed by release of certain types of information." *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010) (internal quotation marks and citations omitted).  Reflecting that balance, the FOIA contains nine exemptions set forth in 5 U.S.C. § 552(b), which "are explicitly made exclusive and must be narrowly construed." *Milner v. U.S. Dep't of Navy*, 562 U.S. 562, 565 (2011) (internal quotation marks and citations omitted) (citing *FBI v. Abramson*,

456 U.S. 615, 630 (1982)); *see Murphy v. Exec. Office for U.S. Attys.*, 789 F.3d 204, 206 (D.C.

Cir. 2015); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice* (*CREW*), 746

F.3d 1082, 1088 (D.C. Cir. 2014); *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865,

869 (D.C. Cir. 2010).  "[T]hese limited exemptions do not obscure the basic policy that

disclosure, not secrecy, is the dominant objective of the Act."  *Rose*, 425 U.S. at 361.

   The agency invoking an exemption to the FOIA has the burden "to establish that the

requested information is exempt."  *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443

U.S. 340, 352 (1979); *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489

U.S. 749, 755 (1989); *DiBacco*, 795 F.3d at 195; *CREW*, 746 F.3d at 1088; *Elec. Frontier

Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 7 (D.C. Cir. 2014); *Assassination Archives &

Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003).  In order to carry this burden, an agency

must submit sufficiently detailed affidavits or declarations, a *Vaughn* index of the withheld

documents, or both, to demonstrate that the government has analyzed carefully any material

withheld, to enable the court to fulfill its duty of ruling on the applicability of the exemption, and

to enable the adversary system to operate by giving the requester as much information as

possible, on the basis of which the requester's case may be presented to the trial court.[4]  *See

Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996) ("The description and

explanation the agency offers should reveal as much detail as possible as to the nature of the

document, without actually disclosing information that deserves protection . . . . [which] serves

the purpose of providing the requestor with a realistic opportunity to challenge the agency's

decision." (citation omitted)); *see also CREW*, 746 F.3d at 1088 ("The agency may carry that

burden by submitting affidavits that 'describe the justifications for nondisclosure with reasonably

---

[4]    "A *Vaughn* index describes the documents withheld or redacted and the FOIA exemptions invoked, and
explains why each exemption applies."  *Prison Legal News v. Samuels*, 787 F.3d 1142, 1145 n.1 (D.C. Cir. 2015).

specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" (quoting *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). While "an agency's task is not herculean[,]" it must "describe the justifications for nondisclosure with reasonably specific detail and demonstrate that the information withheld logically falls within the claimed exemption." *Murphy*, 789 F.3d at 209 (internal quotation marks omitted) (citing *Larson*, 565 F.3d at 862).

The FOIA provides federal courts with the power to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant," 5 U.S.C. § 552(a)(4)(B), and "directs district courts to determine *de novo* whether non-disclosure was permissible," *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015). A district court must review the *Vaughn* index and any supporting declarations "to verify the validity of each claimed exemption." *Summers v. U.S. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). Moreover, a district court has an "affirmative duty" to consider whether the agency has produced all segregable, non-exempt information. *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) (referring to court's "affirmative duty to consider the segregability issue *sua sponte*") (quoting *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007)); *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008) ("[B]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld.") (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007)); *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999) ("[W]e believe that the District Court had an affirmative duty to consider the segregability issue

*sua sponte* . . . . even if the issue has not been specifically raised by the FOIA plaintiff."); *see also* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

Summary judgment is appropriate when "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56. "In FOIA cases, summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. U.S. Secret Serv*., 726 F.3d 208, 215 (D.C. Cir. 2013) (internal quotation marks omitted) (quoting *Consumer Fed'n of Am. v. U.S. Dep't of Agric*., 455 F.3d 283, 287 (D.C. Cir. 2006)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (quoting *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)); *Larson*, 565 F.3d at 862 (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)).

## III.   DISCUSSION

Treasury has categorized the withheld GM and Chrysler documents into nine topical categories:  (1) GM and Chrysler confidential financial data; (2) GM and Chrysler compensation and benefits information; (3) GM transactions; (4) GM dealers and dealer networks; (5) GM manufacturing and operations; (6) GM European operations and Opel; (7) Chrysler confidential tax and legal liability information; (8) Chrysler confidential operational, labor, and manufacturing information; and (9) Chrysler draft transactional materials.  *See* Jt. Mem. Supp. Mot. Summ. J. ("Jt. Mem.") at 15–24, ECF No. 36.  The plaintiff challenges the withholding

under Exemption 4 of the documents on two main grounds.  First, the plaintiff argues the defendants failed to show that Treasury obtained the withheld information from GM or Chrysler. Second, the plaintiff argues the release of the information would in no way impair Treasury's ability to obtain information in the future, nor is it likely to cause GM or Chrysler substantial competitive harm, and, therefore, the information is not confidential.[5]  In making these arguments, the plaintiff emphasizes that the *Vaughn* indices generally provide insufficient information to make a determination as to whether the defendants properly withheld documents under Exemption 4.  Each of the plaintiff's arguments is addressed in detail below following review of the Exemption 4 legal framework and the information the plaintiff has clarified it does not seek.  For the reasons discussed below, and in light of the deficiencies in the defendants' papers, the defendants will be instructed to submit a revised *Vaughn* index and/or amended declarations, subjecting both the parties and this Court to another round of summary judgment briefing.[6]

---

[5]       The plaintiff additionally complains that Treasury has failed to provide its own independent determination that all the withheld information is exempt from disclosure because it submitted *Vaughn* indices prepared by GM and Chrysler lawyers rather than by "the appropriate agency officials."  Pl.'s Mem. at 22-23.  Thus, the plaintiff argues, "because the government itself has failed to provide the Court with the agency's own sworn declaration concerning the information that remains at issue, with a detailed justification as to why such information is exempt from disclosure under Exemption 4, the agency simply has failed to meet its burden of proof here."  *Id.* at 24.  As support, the plaintiff posits that courts only rely on *Vaughn* indices produced by FOIA submitters in reverse-FOIA cases, where the submitter has sued the agency over its determination to release information. *See id.* at 23, 23 n.30. The plaintiff's arguments are unavailing.  The government may work with the private persons who would be most affected by the release of the information, and Treasury official Kathleen Cochrane declared, *inter alia*, (1) "Treasury has conducted a detailed review of each page of the records processed in this case[,]" (2) "Treasury believes that GM and Chrysler have credibly asserted" the withheld information is exempt from disclosure, and (3) "[a]fter careful consideration," Treasury "determined that no additional information can be released."  Cochrane Decl. ¶¶ 37–38.  As the defendants note, courts "routinely rel[y] on declarations and *Vaughn* indices produced by FOIA submitters . . . where records are being withheld" under Exemption 4 because they "are best situated to identify information that could cause them substantial competitive harm."  Jt. Opp'n & Reply at 33 (citing *Pub. Citizen v. U.S. Dep't of Health & Human Servs.*, 975 F. Supp. 2d 81, 113–17 (D.D.C. 2013)); *see also Durnan v. U.S. Dep't of Commerce*, 777 F. Supp. 965, 966–67 (D.D.C. 1991) (relying on declarations from FOIA submitters to justify agency's withholding under Exemption 4).

[6]       Given the deficiencies in the defendants' *Vaughn* indices and related declarations in supporting withholdings under Exemption 4, the plaintiff urges that summary judgment should be granted to CAS.  *See* Pl.'s Mem. at 3 (arguing plaintiff is entitled to summary judgment because "the government simply has failed to overcome FOIA's mandate for openness").  This invitation is tempting, but the Court nonetheless will provide the

A.      FOIA's Exemption 4

Under the FOIA, "trade secrets and commercial or financial information obtained from a person" that is "privileged or confidential" may be withheld from disclosure. 5 U.S.C. § 552(b)(4).  Where, as here, the documents are not trade secrets, *see* Cochrane Decl. ¶ 35 ("Treasury has not withheld any information as a trade secret under Exemption 4."),[7] to sustain the burden of showing that Exemption 4 was properly applied, an agency must establish that the withheld records are "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential."  *Pub. Citizen Health Research Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983).  The parties do not dispute that the first requirement of this test is met.  *See* Jt. Opp'n & Reply at 14; *see generally* Pl.'s Mem.

With respect to the second requirement, the statute makes clear that a "'person' includes an individual, partnership, *corporation*, association, or public or private organization other than an agency."  5 U.S.C. § 551(2) (emphasis added).  Information "generated within the Government" is not "obtained from a person" and, thus, does not fall under the exemption.  *Bd. of Trade v. Commodity Futures Trading Comm'n*, 627 F.2d 392, 404 (D.C. Cir. 1980), *abrogated on other grounds by U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595 (1982); *see also Soucie v. David*, 448 F.2d 1067, 1079 n.47 (D.C. Cir. 1971) ("The exemption for confidential

---

defendants an opportunity to supplement their invocation of this FOIA exemption, with the additional guidance outlined in this Memorandum Opinion.  *See United Techs. Corp.*, 601 F.3d at 565 ("[B]ecause [the agency]'s conclusionary statement is unreviewable, we must remand for it to examine the relevant data and articulate a satisfactory explanation for its action, if it can, including a rational connection between the facts found and the choice made." (internal quotation marks and citation omitted) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

[7]       Despite the representation in Treasury's declaration, close inspection of the *Vaughn* indices reveals several entries referring to trade secrets.  *See* Chrysler *Vaughn* Index at 62, HHR-DOT2-00077513 (alleging the withheld document contains "trade secrets regarding Chrysler's product development"); *id.* at 65, HHR-DOT2-00324354, HHR-DOT2-00324650, and HHR-DOT2-00324823 (same); *id.* at 84, HHR-DOT2-00023370 (same).  This may just be a reflection of the general lack of precision with which the defendants prepared the *Vaughn* indices, which, if not corrected in the next round of briefing, will entitle the plaintiff to summary judgment.

information is available only with respect to information received from sources outside the Government[,]" and applies "only to the extent [the document] contains private information given confidentially . . . or information obtained from nongovernmental parties on a confidential basis."); *Grumann Aircraft Eng'g Corp. v. Renegotiation Bd.*, 425 F.2d 578, 582 (D.C. Cir. 1970) ("[Exemption 4] . . . encompass[es] only information received from person outside the Government.").

With respect to the third requirement of the test, under which withheld records must be "privileged or confidential," the defendants do not withhold any documents as "privileged." Thus, the parties dispute only whether the documents are "confidential." The standard for determining whether information is confidential differs depending on whether the information was voluntarily or involuntarily submitted to the agency.

A two-prong test is used to determine whether information involuntarily submitted to a Federal agency is "confidential" for FOIA purposes:  whether release of the records would (1) impair the Government's ability to obtain necessary information in the future; or (2) cause "substantial harm to the competitive position of the person from whom the information was obtained." *Nat'l Parks & Conserv. Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974) ("*National Parks*"); *accord Jurewicz v. U.S. Dep't of Agric.*, 741 F.3d 1326, 1331 (D.C. Cir. 2014). With respect to the first prong, "the governmental impact inquiry . . . focus[es] on the possible effect of disclosure on [the] quality" of the information. *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 148 (D.C. Cir. 2001) (quoting *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 878 (D.C. Cir. 1992)). For the second prong, "[s]ubstantial competitive harm" is "limited to harm flowing from the affirmative use of proprietary information *by competitors*," *Pub. Citizen Health Research Grp.*, 704 F.2d at

12

1291 n.30 (emphasis in original); *see Jurewicz*, 741 F.3d at 1331 (same), and "requires a

showing of both actual competition and a likelihood of substantial competitive injury," *Jurewicz*,

741 F.3d at 1331.  "In reviewing an agency's determination as to substantial competitive harm,"

courts "recognize that 'predictive judgements are not capable of exact proof,' and . . . generally

defer to the agency's predictive judgments as to 'the repercussions of disclosure.'" *United

Techs. Corp.*, 601 F.3d at 563 (citations omitted).

The bar is lower for withholding confidential information voluntarily provided to the

Government, making withholding an easier burden for the agency to meet:  voluntarily submitted

information need only be "of a kind that would customarily not be released to the public by the

person from whom it was obtained" to be withheld as confidential.  *Critical Mass*, 975 F.2d at

878.  "[I]n assessing customary disclosure, the court will consider how the particular party

customarily treats the information, not how the industry as a whole treats the information."  *Ctr.

for Auto Safety*, 244 F.3d at 148.  "A party can voluntarily make protected disclosures of

information, and as long as the disclosures are not made to the general public, such disclosures

do not constitute customary disclosures."  *Id.*

A threshold question in this case is which standard applies in evaluating the agency's

withholding under Exemption 4:  the standard applicable to voluntarily or involuntarily

submitted documents?  "For purposes of Exemption 4, information provided to the government

because it is required for participation in a voluntary government program is treated as

mandatory, as opposed to a voluntary, submission of information."  *Judicial Watch, Inc. v. U.S.

Dep't of Treasury*, 796 F.Supp.2d 13, 35 n.8 (D.D.C.2011); *see also Ctr. for Auto Safety*, 244

F.3d at 149 (holding that when an agency has "actual legal authority" to compel production of

information, such production is not voluntary for the purposes of the FOIA); *Pub. Citizen Health*

*Research Grp. v. FDA*, 964 F.Supp. 413, 414 n. 1 (D.D.C. 1997) ("Information is submitted

involuntarily, however, if it is supplied pursuant to statute, regulation or some less formal

mandate.").

In this case, while the defendants summarily contend that some of the disputed

documents were voluntarily provided to Treasury, *see* Jt. Mem. at 12 (arguing some of the

disputed information qualifies for Exemption 4 protection under the *Critical Mass* test);

Cochrane Decl. at 9 n.3 ("Some of the information provided by GM and Chrysler may not have

been required in connection with their loan applications, and would therefore be considered

voluntarily submitted."), the defendants point to no particular documents and litigate only based

on the involuntary standard, *see* Cochrane Decl. at 9 n.3 ("Treasury believes that all of the

withheld information satisfies the stricture standard applied to mandatorily-submitted documents,

and will therefore litigate only based upon this higher standard.").  Moreover, the defendants do

not dispute that any information turned over by GM and Chrysler to Treasury was submitted by

the companies in their efforts to secure funding under TARP.  Therefore, the withheld documents

are considered involuntarily submitted, and the ordinary *National Parks* standard must be

applied.  *See Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 796 F.Supp.2d at 35 n.8; *see also*

*Ctr. for Auto Safety*, 244 F.3d at 149.

      **B.**     **Information Not Sought by the Plaintiff**

Before turning to the withheld documents disputed by the parties, the Court first

considers the extent to which documents listed in the *Vaughn* indices are no longer disputed.

First, one document identified as withheld in full, *see* Chrysler *Vaughn* Index at 71, HHR-DOT2-

00004091 ("Obama Administration New Path to Viability for GM & Chrysler" document), was,

according to the plaintiff, actually released in full, *see* Pl.'s Mem. at 27.  The defendants claim

the document was "inadvertently included" on the *Vaughn* Index and represent that "[t]he inclusion of this document on Chrysler's . . . *Vaughn* Index was merely an oversight."  Jt. Opp'n & Reply at 17.  Accordingly, the parties' motions are denied as moot as to this document.

Second, the plaintiff does not contest the defendants' withholding of any information under Exemption 6, *see* Pl.'s Mem. at 26 n.33, which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6).  In particular, the plaintiff "does not seek access to any personal information" and "has no interest in obtaining individuals' cell phone information."  Pl.'s Mem. at 26 n.33 (internal quotation marks and emphasis omitted).  The defendants do not specify in their papers, however, the documents withheld under Exemption 6, in whole or in part, that are no longer disputed.  The defendants make a passing reference in a footnote to one Chrysler document, as an *example* of "[s]everal Chrysler emails [which] also contain redactions of . . . personal information," and one GM document, that "contains information redacted under Exemption 6, not Exemption 4."  Jt. Opp'n & Reply at 14 n.9.  Yet, with respect to the cited exemplar Chrysler document, the Chrysler *Vaughn* index makes no reference to Exemption 6 as the basis for withholding.  *See* Chrysler *Vaughn* Index at 27, HHR-DOT2-00342767 (redacting "[t]he entire text" of an email that allegedly "references detailed operational and financial information about Chrysler's suppliers, including accounts payable figures").  Therefore, summary judgment is denied to all parties with respect to this document.  The GM *Vaughn* Index indicates that the cited exemplar GM document, on the other hand, was redacted solely under Exemption 6.  *See* GM *Vaughn* Index at Doc. No. 529.  Therefore, summary judgment is granted to the defendants, as conceded, and denied to the plaintiff as to this document.

Although the parties failed in their briefing to identify precisely the documents on the *Vaughn* indices containing withholdings no longer disputed, the Court's own search through the Chrysler *Vaughn* Index reveals that several Chrysler documents were redacted only to withhold cell phone information. *See* Chrysler *Vaughn* Index at 13, HHR-DOT2-00044792; *id.* at 20, HHR-DOT2-00158246, HHR-DOT2-00158247, HHR-DOT2-00158243, HHR-DOT2-00165104, and HHR-DOT2-00165108; *id.* at 27, HHR-DOT2-00341586, HHR-DOT2-00341590, and HHR-DOT2-00342765; *id.* at 31, HHR-DOT2-00346589.  Similarly, the Court's own search through the GM *Vaughn* Index shows Exemption 6 as the only basis for withholding information in a number of documents.  *See* GM *Vaughn* Index at Doc. Nos. 92, 114, 188, 457, 473, 504–07, 516, 528, 535, and 541–43.  Therefore, summary judgment is also granted to the defendants, as conceded, and denied to the plaintiff as to these documents.

Third, the plaintiff is not "interested in the operations and performance of individual dealers or information related to employee compensation and benefit matters," Pl.'s Mem. at 26 n.33 (internal quotation marks and emphasis omitted), which information is covered in document categories (2) (GM and Chrysler compensation and benefits information) and (4) (GM dealers and dealer networks).  Here, again, the defendants have failed to clarify or provide an exhaustive list of exactly which documents have been redacted or withheld because such documents contain information about "the operations and performance of individual dealers" or "related to employee compensation and benefits matters" for either GM or Chrysler.

The burden on the Court to search through all 827 entries in the *Vaughn* indices to identify the documents that are no longer disputed is significant.  This task is made more difficult here, or even impossible, because the defendants' deficient *Vaughn* indices and lack of clarifying declarations or briefing frustrate efforts to make definitive rulings.  Indeed, the documents falling

into categories (2) and (4) are only ambiguously categorized in the GM *Vaughn* Index.  For example, though the GM *Vaughn* Index characterizes certain documents as falling into category (4), the GM Declaration indicates those documents are "also categorized as Transactions—GM Restructuring," thereby falling under category (3).  GM Decl. ¶ 32.  Thus, it is unclear whether any category (4) documents remain disputed.  Furthermore, while the GM *Vaughn* Index makes a clumsy stab at identifying the category into which each document falls, the Chrysler *Vaughn* Index is silent as to which documents belong to which category.  *See generally* Chrysler *Vaughn* Index.  Thus, it is entirely unclear which Chrysler documents or information belong in category (2) and were withheld solely because of "information related to employment compensation and benefits matters" and, thus, are uncontested.  Moreover, to the extent that the defendants' declarations or *Vaughn* indices indicate that documents could belong in multiple categories, the indices generally fail to address the segregability of any properly withheld information from releasable information.

Thus, the deficiencies in the *Vaughn* indices submitted in this case, and discussed in greater detail below, permeate even the purportedly undisputed records and preclude summary judgment determinations except in narrow circumstances.  For this reason, to the extent they continue to withhold any documents, the defendants are instructed to submit a revised, *combined Vaughn* index for both GM and Chrysler, with numbered entries for all remaining disputed documents.  To enable a ruling on each specific contested document, the *Vaughn* index shall detail, for each disputed document, (1) whether any redaction has been made under Exemption 6 and, if so, providing the nature of the information redacted, and (2) the specific category or categories that apply.

*       *       *

17

The Court could stop here and require the defendants simply to redo their submissions, but additional guidance about the legal disputes raised by the parties may assist the parties in reducing the number of disputed documents at issue.  Consequently, the Court addresses below the parties' disputes over the application of Exemption 4.

## C.   Sufficiency of Showing That Withheld Information Was Obtained From a Person

The plaintiff argues the defendants have failed to show that some withheld information was "obtained from a person," a prerequisite for invoking Exemption 4, and failed to explain why information authored or generated by government officials, as opposed to GM or Chrysler, "cannot be segregated and released."  Pl.'s Mem. at 26–27.  The plaintiff points out that "[m]any of the descriptions of documents do not identify authors, or even whether the authors were industry representatives or government officials," and sometimes provide author names without identifying who those individuals are.  Pl.'s Mem. at 24.  The plaintiff also notes that some documents withheld contain email exchanges between government officials and GM or Chrysler representatives and argues these email exchanges therefore "necessarily include[] at least some information that was authored or created by government officials" and, thus, is not exempt from release.  Pl.'s Reply Mem. Supp. Mot. Summ. J. ("Pl.'s Reply") at 4, ECF No. 51 (emphasis omitted).  The Court generally agrees with the deficiencies pointed out by the plaintiff in the defendants' invocation of Exemption 4.

 "[I]nformation originally obtained from an outside source, but later included in agency documents, may be considered 'obtained from a person'" and qualify for Exemption 4 protection.  *COMPTEL v. FCC*, 910 F. Supp. 2d 100, 117 (D.D.C. 2012).  Courts have explained, "information in an agency-generated [document] is still 'obtained from a person' if such information was supplied to the agency by a person or could allow others to 'extrapolate'

such information." *S. All. for Clean Energy v. U.S. Dep't of Energy*, 853 F. Supp. 2d 60, 68

(D.D.C. 2012) (citing *Gulf & W. Indus. v. United States*, 615 F.2d 527, 529–30 (D.C. Cir.

1979)); *see also Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 28 (D.D.C.

2000) ("[D]ocuments prepared by the federal government may be covered by Exemption 4 if

they contain summaries or reformulations of information supplied by a source outside of the

government."). Also, when "information was initally obtained from outside the agency and then

was modified through negotiations," the negotiations do not change the fact that the information

was "obtained from a person" and qualifies for exemption. *S. All. for Clean Energy*, 853 F.

Supp. 2d at 68 (citing *Pub. Citizen Health Research Grp. v. Nat'l Insts. of Health*, 209 F. Supp.

2d 37, 45 (D.D.C. 2002)). When information "constitutes that agency's own analysis," however,

"such information is the agency's information, and not 'obtained from a person' under

Exemption 4." *Id.* (citing *Philadelphia Newspapers, Inc. v. Dep't of Health & Human Servs.*, 69

F. Supp. 2d 63, 66–67 (D.D.C. 1999), and *Fisher v. Renegotiation Bd.*, 355 F. Supp. 1171, 1173–

74 (D.D.C. 1973)). Accordingly, courts have recognized, "the key distinction . . . is between

information that is either repeated verbatim or slightly modified by the agency, and information

that is substantially reformulated by the agency, such that it is no longer a 'person's' information

but the agency's information." *Id.*

   As noted above, the defendants bear the burden of establishing the applicability of FOIA

exemptions, *see Merrill*, 443 U.S. at 351–52; *Elec. Frontier Found.*, 739 F.3d at 7, and

"conclusory and generalized allegations of exemptions are unacceptable," *Morley*, 508 F.3d at

1115 (internal quotation marks omitted). Courts may not "speculate as to whether [an]

[e]xemption [ ] might, under some possible congruence of circumstances not proven or even

asserted be properly applied to . . . documents, nor will [they] assume that all the necessary

conditions are met merely because the agency invokes an exemption." *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 870 (D.C. Cir. 1980); *see also Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979) ("The reviewing court should not be required to speculate on the precise relationship between each exemption claim and the contents of the specific document."); *S. Alliance for Clean Energy*, 853 F. Supp. 2d at 67 ("Vague, sweeping, or conclusory materials are inadequate to support summary judgment in favor of an agency and the acceptance of such inadequate support 'would constitute abandonment of the trial court's obligation under FOIA to conduct *de novo* review.'" (quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218–19 (D.C. Cir. 1987))). Thus, while "a *Vaughn* index may . . . contain brief or categorical descriptions when necessary to prevent the litigation process from revealing the very information the agency hopes to protect[,]" *ACLU v. CIA*, 710 F.3d 422, 432 (D.C. Cir. 2013), it must also be "sufficiently distinct to allow a court to determine . . . whether the specific claimed exemptions are properly applied[,]" *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994) (quoting *Vaughn v. United States*, 936 F.2d 862, 868 (6th Cir. 1991)).

The defendants contend that the authors of emails, or where the emails were generated, are irrelevant because the information in the emails was obtained from GM and Chrysler. Jt. Opp'n & Reply at 15 (citing *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 892 F. Supp. 2d 28, 39 (D.D.C. 2012) (noting "the focus of FOIA is 'information, not documents'")). In arguing the *Vaughn* indices are sufficiently detailed despite their lack of author information, the defendants rely on this Court's decision in *Toensing v. U.S. Dep't of Justice*, 999 F. Supp. 2d 50, 59–60 (D.D.C. 2013). *See* Jt. Opp'n & Reply at 36–37. Their reliance is misplaced. In *Toensing*, this Court found the *Vaughn* index sufficient because "the dates of the documents and the names of their authors [were] irrelevant to a determination of whether the documents [were]

protected as attorney work product[,]" and the agency had identified each document as having been prepared by agency attorneys, albeit without providing their names.  999 F. Supp. 2d at 59–60.

By contrast, here, for many of the disputed documents, without more information about the authors, the Court cannot determine whether the documents contain information "obtained from a person" rather than information generated within Treasury.  *See, e.g.*, GM *Vaughn* Index at Doc. Nos. 10–12 (drafts of legal pleadings with no identified author); *id.* at Doc. Nos. 17–18 (presentations with no identified author); *id.* at Doc. No. 59 ("email chain regarding draft notes and charts in connection with Section 363 Sale" with no identified authors or email addresses that would assist in identifying authors); *id.* at Doc. No. 60 ("email chain regarding strategy discussion in connection with Section 363 Sale" with no identified authors or email addresses that would assist in identifying authors); *id.* at Doc. No. 196 ("[e]mail chain regarding strategy for dealers in connection with restructuring efforts" with no identified authors or email addresses that would assist in identifying authors); Chrysler *Vaughn* Index at 29, HHR-DOT2-00345086, HHR-DOT2-00345246, HHR-DOT2-00345262, HHR-DOT2-00345294, HHR-DOT2-00345363, HHR-DOT2-00345425, HHR-DOT2-00345570, HHR-DOT2-00345797, and HHR-DOT2-00346653 ("email chain regarding Chrysler's funding requests" with no identified authors or email addresses that would assist in identifying authors); *id.* at 31, HHR-DOT2-00346934 ("email chain concerning Chrysler's borrowing request from the Treasury" with no identified authors or email addresses that would assist in identifying authors); *id.* at 34, HHR-DOT2-00347885 and HHR-DOT2-00348168 ("email chain discussing Chrysler's labor costs" with no identified authors or email addresses that would assist in identifying authors); *id.* at 58, HHR-DOT2-00027799, HHR-DOT2-00028214, HHR-DOT2-00038182, HHR-DOT2-00038185,

21

HHR-DOT2-00150289, HHR-DOT2-00460713, and HHR-DOT2-00028303 (presentation with no identified author). The same is true for entries naming certain authors but failing to identify their business or government affiliations by, for example, providing their email addresses. *See, e.g.*, GM *Vaughn* Index at Doc. No. 189, 195, 200 ("document[s] regarding message from Ken Cole to Congress in connection with GM long-term plan with its dealers"); Chrysler *Vaughn* Index at 2, HHR-DOT2-00119592 (requesting redaction of text in emails from "John E. Mazey" and "Peter Chadwick"). The Court will not speculate about who these individuals are and their government or business affiliation.

Chrysler's failure to identify authors and/or their affiliations for some documents is particularly puzzling given that some entries in its *Vaughn* Index contain detailed information about the authors and request specific redactions accordingly. *See, e.g.*, Chrysler *Vaughn* Index at 3–5, HHR-DOT2-00129842, HHR-DOT2-00129850, HHR-DOT2-00129858, HHRDOT2-00130694, HHR-DOT2-00130697, HHR-DOT2-00183224, HHR-DOT2-00183262, and HHR-DOT2-00183265 (requesting redactions in "email chains . . . regarding product liability issues" of emails sent by an individual with a Chrysler email address, "Holly Leese (hel@chrysler.com)"); *id.* at 32, HHR-DOT2-00347680 (requesting redaction of entire text of email from an individual with a Chrysler email address, "rek6@chrysler.com"). The same cannot be said for GM, as its *Vaughn* Index is generally consistently vague with respect to authors or affiliations. *See, e.g.*, GM *Vaughn* Index at Doc. Nos. 468, 470 ("[e]mail from attorneys"); *id.* at Doc. No. 533 ("email from Harry Wilson"); *id.* at Doc. No. 537 ("[e]mail from Brian Osias to Walter Borsi"). Without adequate information about whether an author is affiliated with GM, Chrysler, or Treasury, the Court cannot determine if the information within a

particular document was "obtained from a person" and qualifies for withholding under Exemption 4.

The plaintiff specifically contests the defendants' alleged refusal to "segregate[] and release[]" certain emails based on authors.  Pl.'s Mem. at 26–27, 27 n.35 (listing *examples*, but no comprehensive list, of documents or Bates numbers).  In response, the defendants make the conclusory representation that the documents have been redacted to withhold only information generated by GM or Chrysler.  *See* Jt. Opp'n & Reply at 15.

With respect to redactions, the D.C. Circuit has acknowledged that establishing the non-segregability of non-exempt material "presents problems for the agency since . . . segregability depends entirely on what information is in a document and how it is presented."  *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).  Therefore, although "agencies should not be forced to provide such a detailed justification that would itself compromise the secret nature of potentially exempt information," agencies "must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts."  *Id.*  To this end, the Circuit has said that "[i]n addition to a statement of its reasons, an agency should also describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document."  *Id.*  Under *Mead Data*, if a small proportion of the information is non-exempt, the agency's explanatory burden is less, and if a larger proportion of the information is non-exempt, "the courts should require a high standard of proof for an agency claim that the burden of separation justifies nondisclosure or that disclosure of the non-exempt material would indirectly reveal the exempt information."  *Id.*  On the other hand, more recent D.C. Circuit decisions have held that an agency may satisfy its segregability obligations by (1) providing a *Vaughn* index that

adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material.  *See, e.g., Loving v. Dep't of Defense*, 550 F.3d 32, 41 (D.C. Cir. 2008) (stating that "the description of the document set forth in the Vaughn index and the agency's declaration that it released all segregable material" are "sufficient for [the segregability] determination"); *Johnson v. Exec. Office for U.S. Attys.*, 310 F.3d 771, 776 (D.C. Cir. 2002) (upholding agency's segregation efforts based on "comprehensive *Vaughn* index" and "the affidavits of [agency officials]").

Notwithstanding the defendants' conclusory representation that "[t]he redacted portions of the email chains are communications actually sent from individuals at GM or Chrysler, responses from Treasury that would otherwise reveal the content of the GM or Chrysler communications, or emails from Treasury containing confidential information that GM or Chrysler provided to Treasury," Jt. Opp'n & Reply at 15, the GM *Vaughn* Index has insufficient detail for the Court to determine whether the documents have been properly redacted.  For each of the GM entries cited by the plaintiff, *see* Pl.'s Mem. at 27 n.35; GM *Vaughn* Index at Doc Nos. 514, 521, 524, 526, 537, the Court is unable to determine what text was redacted from which emails in the chain and, thus, has no way to determine whether the redacted information contained in the emails may have been "obtained from a person."

By contrast, the Chrysler *Vaughn* Index mostly contains sufficient detail for the Court to make a determination with respect to the "obtained from a person" requirement of Exemption 4.[8] *See, e.g.*, Chrysler *Vaughn* Index at 5, HHR-DOT2-00150691 (specifying certain sentences redacted in emails from an individual with a Chrysler email address to a Treasury representative).  While the plaintiff complains that certain emails generated by government

---

[8]  The Court must still determine, as discussed in Section III.A, whether the withheld documents are "confidential" for application of Exemption 4.

representatives have been redacted in their entirety, *see, e.g., id.* at 6, HHR-DOT2-00156206, HHR-DOT2-00156217, and HHR-DOT2-00156221 (redacting "Ron Bloom's [Task Force member] email of 4:47 PM"), these emails appear to be part of email chains that may include prior emails authored by Chrysler representatives, *see, e.g., id.* (redacting "The second and third paragraphs of Bob Nardelli's email of 15:05, starting with 'We/Chrysler want to assure . . .'"). For such entries, the Court could infer that the redacted information was "obtained from a person." *See Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 310 (D.D.C. 2013) ("[A]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material, which must be overcome by some quantum of evidence by the requester." (internal quotation marks omitted) (quoting *Sussman*, 494 F.3d at 1117)).  The defendants, however, have failed to identify exactly which redacted emails are part of such email chains. Also, in any event, some Chrysler documents have been withheld in their entirety without sufficient explanation. *See, e.g.*, Chrysler *Vaughn* Index at 28, HHR-DOT2-00342947 ("email from Brian Oasis [Task Force member] to Robert Manzo and John Rooney discussing Chrysler's DIP financing needs"); *id.* at 31, HHR-DOT2-00346934 ("email chain concerning Chrysler's borrowing request from the Treasury").

Consequently, the defendants shall revise their declarations and/or *Vaughn* indices, which generally provide insufficient explanation, to attempt to sustain their burden of showing Exemption 4 applies to the disputed documents. *See Muttitt*, 926 F. Supp. 3d at 310 ("[A]bsent a sufficient *Vaughn* index . . . , the [agency] must provide other facts, beyond its good-faith assurances, that would establish that it released all reasonably segregable non-exempt information . . . . Such information could include, for example, a description of 'what proportion of the information in a document is non-exempt and how that material is dispersed throughout

25

the document.'") (quoting *Mead Data*, 566 F.2d at 261)).  As directed above, the defendants

should submit one combined *Vaughn* index with numbered entries for all remaining disputed

documents, indicating for each entry how the information has been segregated and released, to

enable a ruling on whether each specific contested piece of information was "obtained from a

person."  The parties will then have the opportunity to renew their dispositive motions and

provide the Court with an exhaustive list and explanation of why each specific contested piece of

information was or was not "obtained from a person."

### D.       Sufficiency of Showing That Withheld Information is Confidential

The dispute over whether documents have been properly withheld as exempt under the

FOIA's Exemption 4 rests principally on whether the documents are "confidential."  For the

reasons discussed below, the defendants have failed to show sufficiently either of the two prongs

necessary to demonstrate the withheld documents are "confidential" within the meaning of

Exemption 4.

#### 1.       *The Government's Ability to Obtain Necessary Information*

The defendants argue that disclosure of the disputed documents "would impair

Treasury's ability to obtain this type of information from companies in the future" because

"companies operating in competitive environments would be reluctant to share such information

with Treasury in the future," Jt. Mem. at 24; Cochrane Decl. ¶ 37, thereby "compromis[ing] the

effectiveness of government programs that may be dependent on sensitive information from such

companies," Jt. Mem. at 29, 31; Cochrane Decl. ¶ 37.  This argument is unavailing for two

reasons.

First, Treasury will be able to obtain whatever information it demands from companies

for participation in a government program providing significant benefits to the participants

because, otherwise, the companies will be unable to participate.  *See Ctr. for Auto Safety*, 244 F.

3d at 148 ("When the Government obtains information as part of a mandatory submission, the

Government's access to the information normally is not seriously threatened by disclosure."

(citing *Critical Mass*, 975 F.2d at 878)); *Critical Mass*, 975 F.2d 878 ("[B]ecause the

concessioners [were] required to provide this financial information . . . , there is presumably no

danger that public disclosure will impair the ability of the Government to obtain this information

in the future" (second alteration in original)).  If a company wants the benefits offered, it will

comply with demands for information, no matter how sensitive.

   Second, the "continued reliability" or "quality" of the information obtained by the

government, *see id.*, is assumed because companies required to submit information would risk

losing the government benefit for failing to comply fully and completely.  For example, the loan

agreements executed with Treasury in this case require "true and complete disclosure" or the

borrower risks default of the loan, *see* Pl.'s Mot., Ex. V ("Chrysler Loan Agreement") at § 5.12,

ECF No. 43; *id.*, Ex. W ("GM Loan Agreement") at § 6.12, ECF No. 43-1.  The alternative to

full compliance with Treasury loan agreements is a potentially draconian penalty:  the

company's bankruptcy.  It strains credulity to believe that the specter of potential disclosure

under the FOIA of certain information required to be submitted to Treasury to obtain a company-

saving loan would lead a company to choose instead to go out of business.  *Accord Pub. Citizen*

*v. Dep't of Health & Human Servs.*, 975 F. Supp. 2d 81, 112–13 (D.D.C. 2013) ("*Pub. Citizen v.*

*HHS*").  There is abundant evidence in the record that GM and Chrysler had to take the

government's bailout or go bankrupt, *see* Pl.'s Reply at 10 & n.7 (citing record evidence), and

the defendants do not dispute this, *see generally* Jt. Opp'n & Reply.

Therefore, the Court finds the defendants have not shown how the release of any of the withheld documents will "impair the Government's ability to obtain necessary information in the future." *Nat'l Parks*, 498 F.2d at 770.  Accordingly, for the defendants to sustain their burden to show that Exemption 4 applies, they must sufficiently show that the release of the withheld documents would likely cause GM or Chrysler substantial competitive harm.

### 2.     *Likelihood of Substantial Competitive Harm*

The plaintiff argues that Treasury has failed to show that disclosure of the withheld documents is likely to cause substantial competitive injury for a number of reasons, including: (1) the effect of disclosure on the companies' "suppliers, dealers, customers (and potential customers), unions and employees" is immaterial, Pl.'s Mem. at 33–34 (quoting GM Decl. ¶ 13; citing Chrysler Decl. ¶ 8) (emphasis omitted), as the agency must show the companies will be harmed by the "affirmative use of proprietary information by competitors," *id.* at 34 (emphasis omitted) (quoting *United Techs. Corp.*, 601 F.3d at 563–64); (2) the companies' requests to Treasury for confidentiality are irrelevant, *id.* at 34; (3) "Treasury's assertions of competitive harm are too conclusory[,]" partly because it fails to explain how disclosure would result in "substantial" competitive injury, *id.* at 35; (4) many of the withheld documents contain old information related to the old companies or information that is otherwise outdated, *id.* at 38–40; and (5) much of the withheld information is already publicly available, *id.* at 41–44.  The Court addresses each of the plaintiff's arguments *ad seriatim* in assessing whether the defendants have sufficiently shown that release of the withheld information is likely to "cause substantial harm to the competitive position of the person from whom the information was obtained." *Nat'l Parks*, 498 F.2d at 770; *see also Pub. Citizen Health Research Grp.*, 704 F.2d at 1290–91.  While the deficiencies in the *Vaughn* indices make it difficult, if not generally impossible, to resolve

disputes as to any of the nine categories of documents withheld, let alone as to individual documents, the principles below should be considered in the revised *Vaughn* index to be submitted with renewed summary judgment filings.

### a. Harm May Come From Non-Direct Competitors

The D.C. Circuit has emphasized that:

> The important point for competitive harm in the FOIA context . . . is that it be limited to harm flowing from the affirmative use of proprietary information *by competitors*. Competitive harm should not be taken to mean simply any injury to competitive position, as might flow from customer or employee disgruntlement or from . . . embarrassing publicity . . . .

*Pub. Citizen Health Research Grp.*, 704 F.2d at 1291 n.30 (emphasis in original) (quoting Mark Q. Connelly, *Secrets and Smokescreens: A Legal and Economic Analysis of Government Disclosures of Business Data*, 1981 WIS. L. REV. 207, 235–36 (1981)); *see also Jurewicz*, 741 F.3d at 1331 ("Exemption 4 . . . 'does not guard against mere embarrassment in the marketplace or reputational injury' . . . [and] substantial competitive harm must 'flow from the affirmative use of proprietary information by competitors.'" (quoting *United Techs.*, 601 F.3d at 563–64)). Thus, to the extent that the defendants oppose the release of documents based on the potential effect of release on "marketplace goodwill," Jt. Mem. at 16, the defendants rely on too broad a definition of competitive harm.

On the other hand, the defendants' argument that competition should be viewed "holistic[ally,]" Jt. Opp'n & Reply at 21, and "GM's and Chrysler's relations with suppliers, dealers, and other constituents fundamentally affect their ability to compete in the auto-manufacturing sector[,]" *id.* at 20–21, is not without merit, contrary to the plaintiff's view. The D.C. Circuit has recognized that the use of information by consumers, suppliers, labor unions, and other entities, even if those entities are not direct competitors, may be detrimental to a

company's competitive position. *See Worthington Compressors, Inc. v. Costle*, 662 F.2d 45, 52 n.43 (D.C. Cir. 1981); *Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 684 (D.C. Cir. 1976) (affirming the district court's finding of competitive harm, reasoning in part that "[s]uppliers, contractors, labor unions and creditors, too, could use [the] information to bargain for higher prices, wages or interest rates, while the concessioner's unregulated competitors would not be similarly exposed").

That said, the defendants' bald assertions that entities other than direct competitors could use the disputed information, if disclosed, to their own competitive advantages, without any explanation of *how* such entities could use the information, is insufficient and unconvincing. *See* GM Decl. ¶ 13 ("GM operates in an extremely competitive environment with respect to a wide range of constituencies, including competitors, suppliers, dealers, customers (and potential customers), unions, and employees regarding a wide range of matters" and "each of these constituencies could, and likely would, use [the disputed information] to its own advantage . . . ."); Chrysler Decl. ¶ 8 ("Chrysler operates in an extremely competitive environment with respect to a wide range of constituencies, including competitors, dealers, suppliers, customers, unions, and employees . . . and insights into Chrysler's deliberations and negotiations . . . could be used to the advantage of any, or all, of these constituencies . . . ."). To meet their burden to show GM and Chrysler will likely be competitively harmed by the use of the disputed information by competitors or other entities, the defendants will need to better explain how such entities will likely use the information to cause competitive harm.

### b.   *Requests For or Promises of Confidentiality Are Not a Basis for Withholding Under Exemption 4*

As the plaintiff correctly notes, *see* Pl.'s Mem. at 34, "Congress has made clear both that the federal courts, and not the administrative agencies, are ultimately responsible for construing

the language of the FOIA, and that agencies cannot alter the dictates of the Act by their own

express or implied promises of confidentiality," *Pub. Citizen Health Research Grp.*, 704 F.2d at

1287 (citations omitted); *see also GC Micro Corp. v. Def. Logistics Agency*, 33 F.3d 1109, 1113

(9th Cir. 1994) ("[W]hether the government has promised to keep the information confidential[]

is not dispositive under Exemption 4.") (citing authorities); *Petkas v. Staats*, 501 F.2d 887, 889

(D.C. Cir. 1974) ("Nor can a promise of confidentiality in and of itself defeat the right of

disclosure.") (citing authorities).  Thus, the defendants may not rely on the confidentiality

provisions in the TARP loan agreements as a basis for withholding documents.

     The defendants deny that Treasury has withheld documents because of the confidentiality

provisions in the TARP loan documents, *see* Jt. Opp'n & Reply at 22, and contend only that

those provisions "are relevant insofar as they show a longstanding expectation that confidential

commercial information could flow to Treasury as part of the TARP process," *id.* at 23.  Notably,

however, the Chrysler *Vaughn* Index indicates that one particular document—a letter from

Chrysler attorneys to Treasury "requesting FOIA confidential treatment of documents being

disclosed to Treasury and of the letter itself"—has been "withheld in its entirely due to the

request for confidential treatment and because of the confidential commercial information that is

contained in and referred to in the letter."  Chrysler *Vaughn* Index at 53, HHR-DOT2-00153630;

*see also id.* at 84, HHR-DOT2-00023370 (withheld presentation regarding Chrysler's

confidential submissions to Treasury" which "Chrysler submitted . . . with the explicit request

that the document be kept confidential").  A company's request for confidential treatment is not a

sufficient basis for withholding information.  *See Raher v. Fed. Bureau of Prisons*, 749 F. Supp.

2d 1148, 1162 (D. Or. 2010) ("[T]he test for confidentiality is not based on the subjective

expectation of the submitter that the information is confidential . . . ."); *Dow Jones Co. v. FERC*,

219 F.R.D. 167, 178 (C.D. Cal. 2003) ("If the Court were to accept [the] defendant's argument, any agency could, theoretically, simply hand out promises of confidentiality to individuals who gave information in order to avoid judicial review as to whether a record can be withheld."). Thus, this entry and others are simply inadequate to explain why or how the release of withheld documents, or segregable information therein, could possibly cause the companies substantial competitive harm.

### c. A Showing of Substantial Competitive Harm is Required

As discussed, *supra* Part III.C, "conclusory and generalized allegations of exemptions are unacceptable." *Morley*, 508 F.3d at 1115 (internal quotation marks omitted). The plaintiff accuses the defendants of failing to assert in their opening brief that any competitive injury would be "substantial" and criticizes the defendants for failing to explain how competitors or suppliers would use withheld information to cause the companies *substantial* competitive injury. *See* Pl.'s Mem. at 35–36. The plaintiff similarly criticizes other aspects of the *Vaughn* indices, arguing that they contain conclusory and boilerplate statements of competitive harm. *See id.* at 36. In response, the defendants argue that they are required only to show a "likelihood of substantial competitive injury," Jt. Opp'n & Reply at 21 (quoting Nat'l Parks & Conservation Ass'n, 547 F.2d at 679), and "because no one can be expected to divine future events, it would be impossible for Defendants and Chrysler to describe with specificity the exact harm that will befall GM and Chrysler," *id.* The defendants also argue they are not required to describe the disputed information in such specific detail that the descriptions would effectively reveal the exempt material. *Id.* The defendants are correct about the law, *see McDonnell Douglas Corp. v. U.S. Dep't of Air Force*, 375 F.3d 1182, 1187 (D.C. Cir. 2004) (party invoking Exemption 4 is not required "to prove disclosure certainly would cause it substantial competitive harm, but only

32

that disclosure would 'likely' do so"), but in the context of the *Vaughn* indices submitted in this case, their response is weak and misses the mark.

Merely conclusory statements about competitive harm, even if repeated numerous times, are not sufficient. *See Pub. Citizen Health Research Grp.*, 704 F.2d at 1290–91 ("Conclusory and generalized allegations of substantial competitive harm, of course, are unacceptable and cannot support an agency's decision to withhold requested documents."); *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 342 (D.C. Cir. 1989) (requiring more than "conclusory statement" regarding substantial competitive harm); *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 269 (D.C.Cir.1982) ("[T]he government produced no evidence except a conclusory affidavit by the HHS director of personnel policy.  Thus, the government has not yet established its Exemption 4 claim."); *Mead Data*, 566 F.2d at 258 ("An agency cannot meet its statutory burden of justification by conclusory allegations of possible harm."); *COMPTEL*, 910 F. Supp. 2d at 117 ("[C]onclusory assertions, without any additional description of the contents of the redacted information or reasons for non-disclosure, are insufficient to show that Exemption 4 was appropriately invoked."); *Biles v. U.S. Dep't of Health & Human Servs.*, 931 F. Supp. 2d 211, 223 (D.D.C. 2013) ("[C]onclusory claims of commercial harm . . . are therefore insufficient to establish [the agency's] burden of proof.").  Even with deference given to agency declarations, "deference does not mean blind acceptance."  *Mudge Rose Guthrie Alexander & Ferdon v. U.S. Int'l Trade Comm'n*, 846 F.2d 1527, 1532 (D.C. Cir.1988).

Similar to the deficiencies previously discussed, many entries in the *Vaughn* indices here are insufficient to sustain the defendants' burden of showing a likelihood of substantial competitive harm.  The GM *Vaughn* Index is, on the whole, entirely insufficient to show competitive harm.  It lists the same boilerplate, ambiguous descriptions and reasons for

withholding countless category (3) documents. *See, e.g.*, GM *Vaughn* Index at Doc. No. 37 ("5/13/09 Draft of Business Issues List for DIP Term Sheet" relating to "[s]pecifically, . . . draft agreements and legal documents, discussions, options, opinions, and/or analysis relating to transactions being considered in 2009 by GM, including restructuring efforts"); *id*. at Doc. No. 106 ("7/2/09 Presentation regarding 363 Sale Outstanding Issues" relating to "[s]pecifically, . . . draft agreements and legal documents, discussions, options, opinions, and/or analysis relating to transactions being considered in 2009 by GM, including restructuring efforts"); *id*. at Doc. No. 503 ("8/11/09 Presentation regarding GM Discussion in connection with 363 Sale" relating to "[s]pecifically, . . . draft agreements and legal documents, discussions, options, opinions, and/or analysis relating to transactions being considered in 2009 by GM, including restructuring efforts"). While true that "a *Vaughn* index may . . . contain brief or categorical descriptions when necessary to prevent the litigation process from revealing the very information the agency hopes to protect," *ACLU v. CIA*, 710 F.3d 422, 432 (D.C. Cir. 2013), cursory statements do not justify withholding even under categorical methodology, *see Prison Legal News v. Samuels*, 787 F.3d 1142, 1149 (D.C. Cir. 2015). Indeed, "[t]he government may [only] justify its withholdings and redactions 'category-of-document by category-of-document, so long as its definitions of relevant categories are sufficiently distinct to allow a court to determine whether specific claimed exemptions are properly applied.'" *Id*. at 1149–50 (quoting *CREW*, 746 F.3d at 1088). Here, they are not.

### d.   Competitive Harm From Old Information is Questionable

Relatedly, and most significantly, the defendants have not sufficiently explained how the release of documents pertaining to Old GM or Old Chrysler or otherwise containing dated, six-year-old financial information could be used by their competitors to cause them harm. As a

threshold matter, because of the deficiencies in the *Vaughn* indices, the Court cannot even determine whether certain undated information pertains to the old or new companies. *See, e.g.*, GM *Vaughn* Index at Doc. No. 16 (undated "[d]etailed financials . . . in connection with outlook and liquidity analysis"); id. at Doc. No. 31 (undated "[d]etailed financials . . . in connection with 13-week outlook and restructuring efforts"). Likewise, the Court cannot discern from many entries how the release of old information could possibly be used by competitors affirmatively to harm the companies today at all, let alone substantially. *See, e.g.*, GM *Vaughn* Index at Doc. No. 466 (information from a draft 2009 media announcement, which GM claims "is a confidential draft document related to GM product offerings and technology").

As the plaintiff notes, the *Vaughn* indices include many entries related only to the old companies, *see, e.g.*, Chrysler *Vaughn* Index at 11, HHR-DOT2-00037687 ("email chain regarding issues related to Oldco"); *id*. at 61, HHR-DOT2-00040314 and HHR-DOT2-00040361 (presentation regarding Old Carco), including email exchanges about liabilities left behind with the old companies, *see, e.g.*, *id*. at 16, HHR-DOT2-00308392 ("email chain regarding product liability"); *id*. at 75, HHR-DOT2-00175339 (document regarding product liability issues); GM *Vaughn* Index at Doc. No. 17 ("5/9/09 Presentation-GM 363 Preparation Update Asset and Liability Separation Process"); *id*. at Doc. Nos. 490–91 (charts of "OldCo Rent Analysis and Decommission Costs"), old financial statements, *see, e.g.*, GM *Vaughn* Index at Doc. 93 ("2007 Financial Statements"), and documents about liquidation, *see, e.g.*, Chrysler *Vaughn* Index at 28, HHR-DOT2-00343725 ("email exchange . . . regarding the wind down budget for Oldco"); *id*. at 60, HHR-DOT2-00039461, HHR-DOT2-00048772, and HHR-DOT2-00368493 ("presentation regarding 'Old Carco LLC Liquidation Budget'"); *id*. at 75 HHR-DOT2-00149114, HHR-DOT2-00149128, and HHR-DOT2-00149555 ("presentation regarding 'Preliminary

Hypothetical Liquidation Analysis'"").  Also withheld are documents with six-year-old financial projections and business plans.  *See, e.g.*, *id.* at 75, HHR-DOT2-00155012 ("2009 presentation . . . regarding projected business plans for the next several years"); GM *Vaughn* Index at Doc. Nos. 31, 48–54 ("[d]etailed financials, including operating and financial results, liquidity outlook and cash flow, in connection with 13-week outlook and restructuring efforts"); *id.* at Doc. No. 130 (containing "tables of financial data").

The defendants make much of the fact that GM bought substantially all of Old GM's assets, including intellectual property and business records, *see* GM Decl. ¶¶ 3–4, and Chrysler bought substantially all of Old Chrysler's assets, *see* Chrysler Decl. ¶ 2, to argue that the companies would be competitively harmed by the release of information about the assets they purchased, *see* Jt. Opp'n & Reply at 23–24.  Notably, however, the defendants do not point specifically to any documents about assets purchased by the new companies, nor do they address the plaintiff's argument with respect to documents about the old companies' liabilities.  *See generally* Jt. Opp'n & Reply; *see also* Pl.'s Reply at 15–16.

The defendants' concern about documents regarding certain assets, particularly, for example, about intellectual property or research and development may be warranted.  *See Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 93 F. Supp. 2d 1, 16 (D.D.C. 2000) (explaining that "[i]nformation does not become stale merely because it is old" and recognizing that information about "years of research and development and enormous financial investment that went into developing the air bag systems used in today's cars," if disclosed, "would allow a competitor to determine the direction of the company's past and current efforts in research and development (and thus beat them to new advancements), and would give competitors an edge in improving their own technology"), *rev'd on other grounds*, 244 F.3d 144 (D.C. Cir. 2001).

Again, however, the defendants have not provided sufficient information in the *Vaughn* indices for the Court to determine whether their concerns are legitimate for the documents withheld that allegedly contain information about the assets purchased.  To enable sufficient review, the defendants must articulate whether withheld documents contain information about assets purchased, specifying the type of assets and whether the assets belong with the new as opposed to the old companies—because, as the plaintiff notes, not *all* assets were purchased by the new companies.  *See* Pl.'s Reply at 15.  Information about assets belonging to the old companies must be segregated and released.

Additionally, because of the defendants' utter lack of response regarding documents about the old companies' liabilities, the Court deems such arguments conceded, and to the extent withheld documents contain information about the old companies' liabilities, that information must also be segregated and released. [9]  *See, e.g.*, Chrysler *Vaughn* Index at 16, HHR-DOT2-00308392 ("email chain regarding product liability"); *id.* at 75, HHR-DOT2-00175339 (document regarding product liability issues); GM *Vaughn* Index at Doc. No. 17 ("5/9/09 Presentation-GM 363 Preparation Update Asset and Liability Separation Process"); *id.* at Doc. Nos. 490–91 (charts of "OldCo Rent Analysis and Decommission costs").

The defendants also argue that the "historical and 'old' financial information can be extrapolated and used to interpret GM's and Chrysler's current or future projections," or "used to determine negotiation strategies[,] . . . approaches in future acquisitions[,]" or "projected

---

[9]      "It is well understood in this Circuit that when a [party] files an opposition to a dispositive motion and addresses only certain arguments raised by [the opposing party], a court may treat those arguments that the [party] failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (citing *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997)); *see also Texas v. United States*, No. 14-5151, 2015 WL 4910078, at *5 (D.C. Cir. Aug. 18, 2015) (affirming "the district court's enforcement of its local rule [LCvR 7(b)] requiring the timely filing of oppositions that actually address the contentions of the movant"); *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.").

business opportunities." Jt. Opp'n & Reply at 25. These arguments are unconvincing,

particularly in light of the unrebutted expert testimony presented by the plaintiff. According to

the plaintiff's expert, Joan B. Claybrook, a former Administrator of the National Highway

Traffic Safety Administration ("NHTSA"), *see* Decl. of Joan B. Claybrook (Jan. 17, 2015)

("Claybrook Decl.") ¶ 3, ECF No. 40-3, "[m]any of the reasons the old companies were having

financial difficulties relate to their own mismanagement and failure to respond to consumer

needs and preferences. Therefore, information concerning the operation of the 'old' mismanaged

companies would be of little competitive value to any current competitor of GM and Chrysler,"

*id*. ¶ 20. Additionally, "information that may pertain to the 'new' companies . . . is now so old

that it would be of little competitive value to any of the other auto companies," as "the auto

companies rarely plan for more than five years in the future because of the many market,

manufacturing, and regulatory variables that inevitably affect such plans." *Id*. ¶ 22.[10] This

expert opinion is bolstered by the fact that GM's 2009 Restructuring Plan submitted to Treasury

to obtain more TARP funding, as the plaintiff points out, did not include projections beyond five

years. *See* Pl.'s Mem. at 40; Pl.'s Mot., Ex. E ("GM Restructuring Plan") at 26–32, ECF No. 41-

4 (discussing "key metrics" and projections from 2009 only through 2014). *But see* Pl.'s Mot.,

Ex. Z ("Chrysler Restructuring Plan") at 6–7, ECF No. 43-4 (showing key metrics and

projections from 2009 through 2016). The defendants have not submitted any evidence to

support their view that five-year old information would still be relevant and useful to

competitors. *Cf. Braintree Elec. Light Dep't v. Dep't of Energy*, 494 F. Supp. 287, 291 (D.D.C.

---

[10]     The defendants cursorily argue that the Claybrook declaration "provide[s] no grounds for piercing the
confidentiality protections of Exemption 4" because it is "conclusory and merely repeat[s] the legal arguments
presented in Plaintiff's brief." Jt. Opp'n & Reply at 28. This argument is meritless. Expert opinion that
information regarding the old companies "would be of little competitive value to any current competitor" and that
"auto companies rarely plan for more than five years in the future" is hardly conclusory.

1980) (explaining "[o]ne of the key issues in any exemption 4 case is the current significance of the commercial data[,]" and finding old data properly withheld under Exemption 4 in light of evidence that the market was similar to the past market and defendant's explanation "that its business has changed little" in the relevant time period).  Thus, the Court agrees with the plaintiff.  Practices of the old companies cannot reasonably be expected to affect the competitive position of the new companies, particularly because the point of restructuring the companies was to leave such practices behind.[11]

### e. *Public Availability of Information Affects the Likelihood of Competitive Harm*

Lastly, the plaintiffs argue that much of the withheld information, or similar information—including "much of the companies' financial and other information leading up to, and in the wake of, the § 363 Sales" and "specific strategies employed in restructuring each of these companies"—is already publicly available in the Restructuring Plans the companies submitted to Treasury, annual 10-K and other required SEC filings, automotive media sources, various Congressional and other governmental reports, and a book published in 2010 about the bailouts.  Pl.'s Mem. at 41–43.  The defendants' generalized, sweeping allegations that old business records "can be extrapolated and used to interpret GM and Chrysler's current or future projections" or reveal the companies' "negotiating positions, timing, approaches, and strategies,"

---

[11]       The cases relied upon by the defendants as support for their assertion that old financial data continues to be useful to competitors are distinguishable because those cases involve historical data from companies that continued to exist in the same form, not companies like GM and Chrysler that were entirely restructured pursuant to a government bailout.  *See People for Ethical Treatment of Animals v. U.S. Dep't of Agric.*, No. Civ. 03 C 195-SBC, 2015 WL 1241141, at *10 (D.D.C. May 24, 2005) (finding company's "detailed financial records from three and four years ago [were] not so old as to render them useless to competitors" in part because the agency did "not establish[] a significant change in the competitive industry" in the last four years and in part because "many documents contain[ed] forward-looking information such as the intended use of the loan proceeds"); *Timken Co. v. U.S. Customs Serv.*, No. Civ. A. 79-1736, 1983 WL 486422, at *4–5 (D.D.C. June 24, 1983) (finding five to ten-year old information would reveal "complete financial pictures" of the companies and "valuable insights into . . . pricing and marketing strategies").

Jt. Opp'n & Reply at 25, invited the plaintiff's generalized, sweeping response with reliance on an approximately 350-page book submitted on the record, *see* Pl.'s SMF ¶ 42 (citing Steven Rattner, *Overhaul:  An Insider's Account of the Obama Administration's Emergency rescue of the Auto Industry* (2010)).  The plaintiff alleges this book reveals the companies' negotiation approaches and strategies and demonstrates that most approaches and strategies employed by GM and Chrysler in 2009 originated not with the companies but with members of the Task Force.  *See* Pl.'s Reply at 18–19.  The defendants respond that the plaintiff has failed to meet its burden to show that any publicly available information is as specific as the withheld information and, thus, any alleged public disclosure does not require the release of the information.  Jt. Opp'n & Reply at 27–28.

The defendants confuse the plaintiff's argument as asserting disclosure under the public domain doctrine.[12]  The plaintiff does not argue the documents are improperly withheld under the public domain doctrine, however, and instead argues that the availability of similar information belies the defendants' assertion about the risk of substantial competitive injury from the release of the documents.  *See* Pl.'s Reply at 20–21 (arguing the plaintiff "relies on the voluminous publicly available information about GM and Chrysler[] . . . simply to further demonstrate the unlikelihood that release of additional information" would cause the companies substantial competitive injury).  Indeed, "[p]ublic availability of information defeats an argument that the disclosure of the information would likely cause competitive harm."  *Nat'l Cmty.*

---

[12] Under what has been termed the "public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record."  *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999); *see Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) ("[T]he government cannot rely on an otherwise valid exemption claim to justify withholding information that has been 'officially acknowledged' or is in the 'public domain.'" (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1130–34 (D.C. Cir. 1983))).  This exception is narrow and, if applicable, requires the information requested to (1) "be as specific as the information previously released[,]" (2) "match the information previously disclosed[,]" and (3) "already have been made public through an official and documented disclosure."  *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (citing *Afshar*, 702 F.2d at 1133).

*Reinvestment Coal. v. Nat'l Credit Union Admin.*, 290 F. Supp. 2d 124, 134 (D.D.C. 2003)

(citing *Worthington Compressors*, 662 F.2d at 51; *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132,

1154 (D.C. Cir. 1987)).  Thus, to the extent that the same negotiation and business strategies

which the defendants seek to protect have been revealed already to the public, release of the

information would not cause GM or Chrysler substantial competitive harm.

In sum, with respect to competitive harm, the defendants have not provided a sufficient

showing to sustain summary judgment in their favor.  The defendants may attempt to

demonstrate, in a revised *Vaughn* index and/or supplemental declarations, that disclosure of the

withheld documents would likely cause substantial competitive harm or, alternatively, release the

withheld documents.  Any supplemental support for continued withholding of any of the

challenged documents must also address whether any reasonably segregable portions of the

withheld documents have been released, keeping in mind that an "agency cannot justify

withholding an entire document simply by showing that it contains some exempt material."

*Hodge v. FBI*, 703 F.3d 575, 582 (D.C. Cir. 2013) (quoting *Stolt-Nielsen Transp. Grp.*, 534 F.3d

at 734).

E.   **The Plaintiff's Request for *In Camera* Review**

Based on the fact that the defendants apparently withheld for several years certain

documents in their entirety that have since been released in full, the plaintiff requests that the

Court conduct an *in camera* review of a sample of the records at issue.  *See* Pl.'s Reply at 23–24;

*see also* Pl.'s Mem. at 4 n.4, 44 n.57.  The Court has broad discretion whether to perform an *in

camera* inspection and may do so if it "believes that *in camera* inspection is needed in order to

make a responsible *de novo* determination on the claims of exemption."  *Spirko v. USPS*, 147

F.3d 992, 996 (D.C. Cir. 1998) (quoting *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978));

*see also Juarez v. Dep't of Justice*, 518 F.3d 54, 60 (D.C. Cir. 2008). *In camera* review, however, "place[s] a substantial burden on judicial resources" and, "when the agency has not satisfied its *Vaughn* indexing duties, *in camera* review also deprives the FOIA requester of an opportunity to present his interpretation of the withheld documents." *Spirko*, 147 F.3d at 997 (internal quotation marks omitted) (quoting *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996)). "Consequently, [the D.C. Circuit] has repeatedly observed that a district court should not undertake *in camera* review of withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions in accordance with *Vaughn*." *Id*. (internal citations omitted); *see also PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 253 (D.C. Cir. 1993) ("*[I]n camera* review is generally disfavored. It is not a substitute for the government's obligation to justify its withholding in publicly available and debatable documents." (internal quotation marks and citations omitted)). For these reasons, and because of the large number of documents at issue here, *see Quinon*, 86 F.3d at 1228 (explaining the number of withheld documents is an important factor to be considered), the plaintiff's request for *in camera* review is denied without prejudice.[13]

## IV. CONCLUSION

The fundamental problem in this case is the lack of detail provided in the defendants' *Vaughn* indices and declarations. *Accord Pub. Citizen v. HHS*, 975 F. Supp. 2d at 118. Mere conclusory statements regarding the alleged source and confidentiality of the information withheld is not sufficient to allow this Court to determine whether the withheld information is

---

[13] The plaintiff, in the alternative, requests discovery. *See* Pl.'s Mem. at 4 n.4, 44 n.57. The Court similarly has broad discretion as to whether to allow discovery in FOIA cases, *see J. Roderick MacArthur Found. v. FBI*, 102 F.3d 600, 605 (D.C. Cir. 1996); *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), but this approach is generally appropriate only in cases where the agency has not undertaken an adequate search for responsive documents, *see Flowers v. IRS*, 307 F. Supp. 2d 60, 68 (D.D.C. 2004). Accordingly, the plaintiff's request for discovery is also denied without prejudice.

properly exempt under the FOIA's Exemption 4.  The defendants have failed to meet their burden, but will be provided another opportunity to demonstrate that withholding the disputed documents under Exemption 4 is proper.

For the reasons explained above, the plaintiff's motion for summary judgment is denied without prejudice.  The defendant and defendant-intervenor's motion for summary judgment is granted in part and denied in part.  The parties' motions are both denied as moot as to the Chrysler document described as "Obama Administration New Path to Viability for GM & Chrysler," Chrysler *Vaughn* Index at 71, HHR-DOT2-00004091.  Summary judgment is granted to the defendants as to the following GM documents containing information withheld exclusively under Exemption 6 of the FOIA:  Bates Nos. HHR-DOT2-00131476, *see* GM *Vaughn* Index at Doc. No. 92; HHR-DOT2-00201164, *see id.* at Doc. No. 114; HHR-DOT2-00174466, *see id.* at Doc. No. 188; HHR-DOT2-00034176, *see id.* at Doc. No. 457; HHR-DOT2-00359037, *see id.* at Doc. No. 473; HHR-DOT2-00001106, HHR-DOT2-00008096, HHR-DOT2-00010565, and HHR-DOT2-00017917, *see id.* at Doc. Nos. 504-507; HHR-DOT2-00086134, *see id.* at Doc. No. 516; HHR-DOT2-00106737 and HHR-DOT2-00112544, *see id.* at Doc. Nos. 528–29; HHR-DOT2-00359090, *see id.* at Doc. No. 535; HHR-DOT2-00359489, HHR-DOT2-00359584, and HHR-DOT2-00359867, *see id.* at Doc. Nos. 541–43.  Summary judgment is likewise granted to the defendants as to the following Chrysler documents redacted only to withhold cell phone information:  Bates Nos. HHR-DOT2-00044792, *see* Chrysler *Vaughn* Index at 13; HHR-DOT2-00158246, HHR-DOT2-00158247, HHR-DOT2-00158243, HHR-DOT2 00165104, and HHR-DOT2-00165108, *see id.* at 20; HHR-DOT2-00341586, HHR-DOT2-00341590, and HHR-DOT2-00342765, *see id.* at 27; and HHR-DOT2-00346589, *see id.* at 31.  Summary judgment is denied without prejudice to the defendants in all other respects.

43

If the defendants elect to continue withholding the remaining documents at issue, in whole or in part, the parties are directed to meet and confer, and, within twenty days, provide the Court with (1) a joint status report that sets forth a list of the records that remain in dispute, in light of this Memorandum Opinion, and that identifies each such disputed record by Bates number, or other unique identifier, and by citation to the particular page(s) of the already submitted *Vaughn* indices where the disputed record is described; and (2) a proposed scheduling order to govern the timing of further proceedings in this action, including deadlines for the submission of a revised, combined *Vaughn* index, any supplementary declarations, and any further dispositive motions.

The revised, combined *Vaughn* index shall include all of the disputed documents, both GM and Chrysler, with numbered entries for all remaining disputed documents.  The *Vaughn* index shall detail:

(a) for each withheld document that is not contested by the plaintiff because the information falls into in categories (2) (GM and Chrysler compensation and benefits information) or (4) (GM dealers and dealer networks), or was withheld, in whole or part, under Exemption 6, how the defendants' segregation obligation has been met;

(b) for all other disputed documents (i) the precise source of the information; (ii) how competitors may affirmatively use the withheld information; (iii) whether withheld information pertains generally to the old or new companies, or both, or to assets or liabilities, specifying the type of asset or liability and the placement of such asset or liability with the old or new companies; and (iv) whether withheld information pertains to practices used by the old companies and, if so, how those practices still apply to the new companies and whether those practices have been publicly revealed or discussed.

44

The defendants may not rely on the confidentiality provision in the TARP loan agreements or the companies' mere requests for confidentiality as a basis for withholding information.

An Order consistent with this Memorandum Opinion will be contemporaneously entered.

Date:  September 30, 2015

_____
BERYL A. HOWELL
United States District Judge